May it please the Court, my name is Maris Liss. My client, Yun Ju Yi, is sitting in the rear of the courtroom, and she has an interpreter with her. My argument will cover about five points. There are sub-points, so I might be sort of a liar. I'm going to tear through the first four points and then dwell on my fifth point. My first point, and if you agree with even one of these points, then this case should be remanded to the Board. The first point is that the Board of Immigration Appeals, which I'll call the Board or the BIA, failed to use the correct standard of proof in reviewing findings of facts. Their standard of proof is clear error. They only have a choice with fact findings review to say there was a clear error or there was not a clear error. But here we presented an error in translation that had to do with the facts of how Ms. Yi felt about her husband at the inception of the relationship. And instead of finding clear error or no clear error, they did a third thing. In a footnote, they said, we're going to pretend that that testimony never existed, we're going to take away the negative inference that the IJ repeatedly gave to it three times in her opinion, and that is not one of their options under the regulations. But, okay, if I understand what happened, is the interpreter, it's a question of that you presented something saying, was it like or love, and the person said that you said that it was wrong, that it could have been like, but they said it didn't, like or love, it could have been either, and this was a paralegal in your office or something like that, or in the office of the person representing Ms. Yi? This was a person fluent in English and fluent in Korean, and she said that the testimony in general was not interpreted in the proper way because it was interpreted word by word and not in the contextual way that Korean is spoken and understood, and also she didn't say like or love, she said fond or love. And if Ms. Yi said that Mr. Nolan loved her and that she grew to love him or grew to be fond of him, it's very different than like, and the judge kept putting the like in quotes, like, she grew to like him, I'm putting air quotes, she liked him, and then had quotes around the word like. She put a tremendous amount of importance on a word that may have been mistranslated, and my second point is that the proceedings were fundamentally unfair because of the fact that there was a faulty translation, and I would also... But didn't the BIA determine that regardless of whether there was a mistranslation of whether she grew to love or to like Mr. Nolan, that there was sufficient evidence to support the IJ's determination that the marriage was not in good faith? You still have to get over that prong, correct? Well, yes, but let me, I'm going to go back from my plan. Well, I know, but the plan, sometimes the plan here is to answer our questions. I know, I know. Okay. So what happens is that when a judge hears testimony and evidence, they can ascribe very positive support, you know, going in an infinitely positive manner to, you know, what testimony is valued at, or they can go extremely negative. Okay, so here the judge went extremely negative, but if the case was remanded, perhaps instead of being neutral, which the board just neutralized the testimony, maybe the judge would have said, wow, this lady was credible. And the judge particularly, you know, was effusive about the credibility. She said she, you know, was very earnest and very credible. So if the judge had heard the correct testimony through a proper interpreter, then maybe it would have shot all the way up to the sky in terms of supporting everything else in the record, and the evidence that the board relied on, you know, the everything else, would have been in the shadows. And that is why the case has to be remanded. We don't know what evidence the immigration judge would have placed on it, and it could have shifted everything. Leaving aside the question about translation, where was the clear error of the determination that the marriage was not valid? I couldn't hear you. Leaving aside this translation question, where is the clear error in the IJ's decision concerning the validity of the marriage? Well, the clear error is in the fact that the judge, it does hinge on translation because it has to do with the subjective mindset of Ms. Yee when she entered the marriage. It's all about whether somebody entered the marriage for the right reasons and whether she grew to love him or whether she just liked him enough to marry him for a green card. That's all the difference in the world. And the clear error is in the judges, you know, hinging a lot and stressing a lot the fact that it was a mere like and not love. So you had four points, or five points, and you wanted to really get to your fifth. So why don't you get to your fifth, which is your most important, I think. Okay. I wanted to introduce to the court the idea that one of the canons of statutory interpretation is the presumption against repeals by implication. And here there was a situation where there was a regulation that used to make an expert testimony about whether there was mental cruelty, a very key factor, the only factor that the agency was supposed to rely on when they were deciding if somebody was the victim of mental cruelty. And then as the respondent pointed out in their brief, this was found to be very difficult for some aliens who couldn't find psychologists that were fluent in their language or couldn't afford experts. And so a statute came and made it, it was supposed to make it easier for immigrants to get relief when they were the victim of mental cruelty, saying that the judge can consider any credible evidence. But the intention, and this is discussed in the Oropesa Wong case, was that aliens should have a bolstered opportunity to prove their case, not a weakened opportunity. And like in Oropesa, the respondent here is trying to use the statute to weaken the alien's case. The regulation indicates that an expert report is the best form of evidence of mental cruelty, and indeed historically it's the only one. Well, okay, so this, if we want to talk about that report, this is someone that met with her for an hour? That is, it is correct. All right, and, and, and. She didn't interview the man, Mr. Nolan, correct? And she decided, based on hearing one side of the story, that it was mental cruelty. Well, I see that you gleaned those informations from the respondent. Well, I'm just saying, what does the record say? How long did she meet with her, and did she interview all of the facts on the other side of the case? You are correct. However, that was not the basis that the board or the immigration judge gave anywhere in the decision. And there is a principle that highly probative and potentially dispositive evidence needs to be discussed in an opinion, and that was not done here. The things that you are mentioning scare me because under chainery, I don't believe the court is supposed to consider those factors which were introduced in the respondent's brief, but not anywhere in any of the decisions. Thank you very much. Thank you. We'll hear from the government. Good morning. May it please the court. Lisa Damiano on behalf of the Attorney General. Good morning to you all. There are two primary issues before the court in this case, both of which are equally dispositive of the claim. And the first is whether the record compels reversal of the agency's determination that Petitioner failed to meet her burden of proving that she and her ex-husband entered into their marriage in good faith. And the second issue is whether the record compels reversal of the agency's conclusion that Petitioner failed to establish that her ex-husband subjected her to extreme cruelty during their brief marriage. Well, if you go to the first, if you just jump to what Counsel for the Petitioner, Ms. List, said about whether it was like or whether it was love or something along those lines, why shouldn't we remand the case to the IJ to determine in the first instance, without consideration of the mistranslation, whether the marriage was in good faith? I think she's arguing a bleed-over to how can we know what effect that had. Right. So first of all, Petitioner's argument starts on what I consider a mischaracterization of the record. She is claiming that there's this intense negative inference from the judge's mentioning of the word like. But what the decision actually says is that the judge mentions that Petitioner testified that she liked Nolan in the findings of fact. And then in the analysis paragraph, the judge discusses a lot of the evidence, doesn't say, oh, well, she said like, but she needed to say love. The judge didn't say she merely said that she liked him. All the judge said was that these are the pieces of evidence presented in terms of the bona fides of the marriage, and this was not sufficient to prove by preponderance of the evidence that this marriage was entered into in good faith. So in other words, the judge referred to this testimony because it was the only testimony regarding the Petitioner's intent with her relationship. In this procedure, if I'm going to understand it correctly, Mr. Nolan could have agreed, but she's seeking an exception because he won't agree to that, you know, what she wants. You mean the joint filing requirement? Right, right. So under the statute and regulations, there are two ways to remove conditional permanent resident status. And the first way is for the couple to jointly file the I-751 petition, but they cannot do so if they're divorced, and in other instances. So in this case, they were already divorced. They were divorced less than a year after the marriage. I'm sorry, it was about a year after the marriage. So they were unable to meet the statutory requirements to file the joint petition. So it wasn't whether he wanted to or not. Under the regulations, she would be unable to. Technically, he could have come in and said, technically he could have come in and said, well, we thought it was going to work out. I believe that that's what both we thought, but we weren't a match, and so it wasn't a sham-type marriage. It was just it didn't work out. Yes, Your Honor. Because Petitioner was required to pursue a waiver of that joint filing requirement, he could have cooperated and provided her an affidavit in support of the marriage to help her prove the bona fides of the marriage. Instead, in this record, we have a letter from Mr. Nolan contradicting everything that Petitioner says. There's kind of two prongs here. So we have the one, whether the marriage was in good faith, and then there's the other issue of extreme cruelty. I guess everyone agrees that she wasn't a battered wife, but it's the extreme cruelty. And it doesn't seem that there's a lot of definition for that. Yes, you're right. So how do we factor that in? Well, first of all, the evidence has to compel a contrary result here. So this Court has said it must affirm the agency decision unless the evidence is so compelling that no reasonable fact-finder could conclude, except as Ms. Yee stated. So there's the regulations that discuss the extreme cruelty. It doesn't give a flat definition, but it discusses the kinds of things that could be considered extreme cruelty. And then there's case law in this circuit. You have the Hernandez case cited, too, in our brief. It discusses a different regulation, but the extreme cruelty phrased in the context of the Violence Against Women Act. And then there are two unpublished decisions that we cite, Solotokie v. Sessions and Krushenick v. Holder. So basically the agency, in this case the judge, had to weigh the evidence and determine whether these events rose to the level of something extreme, something that the Violence Against Women Act would want women to be protected from, and not mere unkindness, as the Hernandez case says. There's no question that Mr. Nolan, on the facts of this record, was difficult to live with, was petulant, as the immigration judge said at times. But she has to show that these events rose to the level of something extreme, something that... Just to cut to a question that I have. How do we know that the IHA considered Dr. Deming's report when the IHA didn't even discuss it, which is fairly unusual? Well... The regulations also say you have to consider all evidence tendered, and that was the most significant evidence she tendered. Yes, Your Honor. The regulation says that they must consider all evidence, all credible evidence filed in support of the claim, and this judge stated that she considered all of the evidence submitted. She stated it twice. Right, but that's sort of boilerplate stuff. I mean, we just don't know what weight that was placed on Dr. Deming's testimony. We don't know what weight was placed on the testimony, but the immigration judge and the agency is not required to discuss every piece of evidence. They're not required to discuss each contention. I agree with you on that, but this was a central piece of their case. That's a bit different. How do we know that either the BIA or the IHA ever considered it, except for the statement that we considered everything? Well, just the statement that she considered everything, and then that the agency has allowed the benefit of the doubt in terms of performing its duties competently. There is no indication here that the judge ignored the evidence. Instead, the judge said twice that she looked at all of the evidence of record. Some might consider that boilerplate, but it's also the judge proclaiming that she did look at everything in this case. And Respondent argues in our brief that this letter from Valerie Deming isn't the crucial or pivotal piece of evidence. It is one piece of evidence to be weighed with all of the rest of the evidence, including petitioner's testimony and the other documents in the record. The letter doesn't conclude that she was subjected to extreme cruelty. The letter doesn't conclude that this counselor knew what the requirements were for a waiver, or even that she was considering the claim in the context of this situation, of the requirements for the waiver. And also, as Your Honor pointed out, Judge Callahan, the letter was produced after a one-hour meeting months after the marriage. It all would have been fine if the IJ had said, I'm just counting this because it was a one-hour meeting, brief, and so forth. But we just don't know how the IJ viewed the letter. I understand, Your Honor. We don't know. We only know that the judge said she considered all of the evidence of record, which is what's required of her, and that she's entitled to a presumption that she performed the duties of her job appropriately. I want to ask you this. Does your argument basically boil down to that the standard is it must compel a different result? And let's assume hypothetically that, if you can look at this two ways, that the IJ had determined that the marriage was in good faith, based on all of this evidence, and that it was extreme cruelty. Would you be pushing the same rock uphill that the petitioner is here? I mean, if you have these facts that could go potentially either way, would you be able to say it compels another result if it had gone the other way? No. I mean, the fact that it could go either way is indicative of the fact that the evidence does not compel a contrary. So is it your sort of assessment of this? It could have gone either way. It went one way, and it doesn't compel a contrary result. Respondent doesn't concede that it could have gone another way, but she has suggested that there are other interpretations. Like, for instance, on the good faith marriage prong, petitioner has argued that the judge could have, in her brief, she says, the judge could have interpreted the non-commingling of assets as something that older people might do in a second marriage. That's a mere suggestion of what the evidence may have been interpreted to be. But here, the evidence doesn't compel that finding, and petitioner didn't testify to that anyway. How do you distinguish Damon? I know your time is running out, but Damon is the toughest case that you have on the good faith marriage. How do you distinguish this case from Damon? Well, I mean, again, Damon looked at the case in terms of the substantial evidence standard, so said that the court must affirm the decision unless the evidence is so compelling. But the facts are pretty close, and we reversed and. . . Yes, Your Honor. In that case, the judge ruled based on implausibilities. So the judge said, I find it implausible that a woman would, a woman with two children would jump. . . I'm sorry. Go ahead. Yes. A woman with two children would jump into a marriage that quickly without having a common cultural bond or common language. So the judge was basing the decision on her own inferences of what a marriage should be. In this case, this is not what the judge did. The judge listed the evidence that petitioner provided and said, this is not sufficient under the regulations to show a bona fide marriage by a preponderance of the evidence. It was petitioner's burden to show that. The judge doesn't insert any of her own beliefs, doesn't say a marriage should be this, and I find it implausible. The judge simply lists out the evidence and states that this is not sufficient. Thank you, Counsel. Any further questions for him? Thank you. Thank you, Your Honors. Rebuttal. Well, first I want to point out that Respondent said that Nolan, the husband, had been just petulant, and the judge and the board used that kind of language. He was the kind of person that his prior wife had to take out two orders of protection on, and he violated the order of protection, and he had this history of mental cruelty, which was another factor that the IJM, the BIA, did not mention about the orders of protection, another set of highly probative and possibly dispositive evidence like the expert report. Aren't they simply prior bad acts? I'm sorry? Aren't they simply prior bad acts under 404? I believe that is. It was a different woman, right? It was a different woman, but it was the same man, and it shows that the behavior that Ms. Yee was claiming has a history that it was repeated, and it makes it more likely to be true. And the evidence about the orders of protections is another piece of evidence like the expert report that may have been, you know, dispositive of the case, which the immigration judge didn't mention. According to the BIA precedent matter of SH, an IJ must include clear and complete findings of fact that are supported by the record. There was due process violation here based on not talking about important pieces of evidence, and there was also due process because it was a faulty translation, not just of the like word, but as the interpreter said, you know, the entire testimony was translated word by word instead of in context. The most key thing is what is this person saying? That's what the judge is judging about, and that compels a remand. Thank you. Thank you both for your arguments today. The case just argued will be submitted for decision.
judges: Thomas, Callahan, Bea